HULBERT *v.* MYBECK.

[No. 27,722. Filed November 24, 1942.]

*Henry G. Doherty,* of East Gary, and *Abe S. Hyman,* of Gary, for appellant.

*George E. Hershman, Russell A. Nixon,* and *Samuel F. Sirois,* all of Crown Point, for appellee.

FANSLER, J.—This is an action by the appellant, a practicing attorney at law, on behalf of himself and all of the members of the Gary Bar Association, seeking to enjoin the defendant, who is clerk of the courts of Lake County and who is not admitted to practice law before the courts of this State, from performing certain acts alleged to constitute the practice of law. The acts complained of involve gratuitous services in assisting persons in establishing the time and place of their birth where the records are incomplete. A temporary injunction was denied, from which ruling this appeal is perfected.

An examination of the record discloses that we need not go into the question of whether the acts complained of constitute the practice of law.

By statutory enactment it is made a misdemeanor to practice law without having been admitted to practice by the courts. Admission to practice has the effect of licensing the person admitted to practice law, and the effect is the same as under the regulations requiring a license to practice the other professions or to engage in certain occupations. It is clear beyond controversy that all laws restricting the practice of a profession or business avoid unconstitutionality only upon the theory that they are a protection to the public. In denying the right to relief by injunction to a physician complaining of one charged with practicing medicine without a license, the court said in *Merz* v. *Murchison* (1908), 11 Ohio C. C. (N. S.) 458, 460:

"The plaintiff, relies rather on what he earnestly urges is a property right to practice medicine and surgery conferred on him by his statutory license, and

an interference with that property right by the unlawful competition of a person unlicensed.

"Probably the statute rather qualifies rights heretofore existing than confers new ones. It is not apparent that the law could stand the test of the constitutional requirement that laws shall be for the equal benefit and protection of the people, if it had no object, purpose or effect other than to confer special privileges upon certain people having certain qualifications to practice medicine, through excluding from such practice all others not so qualified. The constitutionality of the statute is based on the police powers of the Legislature, and whatever benefit is derived from the statute by those engaged in the practice of medicine and surgery is only incidental. The circle of competition may be narrowed by excluding unlicensed competitors, but that is not the purpose of the law. *Palmer & Crawford* v. *Tingle*, 55 O. S., 423, 440; *State* v. *Gardner*, 58 O. S., 599."

In *Land Title Abstract & Trust Co.* v. *Dworken et al.* (1934), 129 Ohio St. 23, 35, 193 N. E. 650, 655, the Supreme Court of Ohio sustained the right of a practicing lawyer to maintain an injunction suit on behalf of himself and the other members of the bar to enjoin the illegal practice of law. The decision was by a divided court. The case above quoted from was not noticed in the opinion, which seems to have been largely influenced by *Unger et al.* v. *Landlords' Management Corp.* (1933), 114 N. J. Eq. 68, 168 A. 229. It is said in the opinion: "It is quite generally held that the right to practice law conferred by the state is a special privilege in the nature of a franchise, and that the holder thereof may be protected from the invasion of the right thus vested in him." But, as pointed out in *Merz* v. *Murchison, supra,* the provision for a license was not intended to

confer a special privilege upon the practitioner, but to protect the public. In the New Jersey case it is said (pp. 69, 70 of 114 N. J. Eq., p. 230 of 168 A.) :

"In this state, the right to practice law is conferred by letters-patent, issued under the great seal of the state by its chief executive. *In re Branch, supra.* This has been the custom from the very beginning of the Province of New Jersey. *In re Hahn, supra.* So that attorneys-at-law in New Jersey are the holders of a franchise granted by the state, through the governor, by letters-patent, by the same authority as formerly was exercised by the British crown. *1 Pollock & Maitland's History of English Law, 191.* A franchise is a 'royal privilege, or branch of the king's prerogative, subsisting in the hands of a subject.' *2 Bl. Com. 37.* A special privilege conferred by government on individuals and which does not belong to the citizens of the country generally by common right. *Ang. & A. Corp. ¶4.* And see *Bouvier's Law Dictionary, 'Franchise,' 'Patent.'*

"Since the right to practice an ordinary calling, business or profession is property (*State* v. *Chapman, supra*), it follows that the right to practice a profession conferred by the state as a franchise by virtue of what was originally the king's prerogative, is a property right.

"It is well established that this court has power to protect the holder of an exclusive franchise from irreparable injury by those not entitled to exercise such franchise."

In this State the right to practice law is not conferred by letters patent. It is true that a franchise in England was a "royal privilege, or branch of the king's prerogative, subsisting in the hands of a subject," and, in strictness, franchises with us are generally grants of a right reserved by the sover-

eign. This is true of franchises to use the public ways, but the practice of law was not and is not a sovereign prerogative. It cannot be doubted that the holder of an "exclusive franchise" may be protected by injunction from irreparable injury, but the practicing lawyer is not the holder of an exclusive franchise, nor has the entire membership of the bar any exclusive franchise to practice law. There is no vested right in the emoluments incident to the practice of the legal profession. An examination of the cases cited and relied upon by the New Jersey chancellor discloses that, while there are statements in some of them to the effect that the right to practice a profession is property, none of them can be fairly said to lend support to the conclusion that the practitioner of a profession, or all of the practitioners, have such a vested right in the emoluments to be gained by the practice of the profession that they have a property interest in such emoluments which is invaded by the practice of the profession by one not licensed.

It is recognized in all of the cases, and by the appellant here, that, unless there is a property right to be protected, private individuals may not maintain an action to enjoin the violation of a statute requiring a license for the practice of a profession. The Supreme Court of South Dakota in *In Re Hosford* (1934), 62 S. D. 374, 382, 252 N. W. 843, 846, said: " . . . the so-called 'right to practice law' is in fact not a vested or absolute 'right,' nor is it a property right, but rather it is a permit, license, franchise, or privilege granted upon demonstration of satisfactory moral fitness and satisfactory legal and general learning." Here, as is quite often the case, the word "franchise" seems to have been used as synonymous with "privilege." This court said in *In Re McDonald* (1928), 200 Ind. 424, 428, 164 N. E. 261, 262: "It, therefore, follows that the practice

of law in this state is not an unqualified constitutional or natural right. It should be termed a privilege which, when once lawfully acquired, continues during good behavior."

It must be concluded that the unlawful practice of law works an injury to the public, and that the members of the legal profession have no special interest which entitles them to maintain an action to enjoin such illegal practice.

Judgment affirmed.

NOTE.—Reported in 44 N. E. (2d) 830.