**Lloyd G. PERRY, Plaintiff,**

v.

**Linda K. BARNARD, et al., Defendants.**

**No. EV 88–24–C.**

United States District Court,
S.D. Indiana,
Evansville Division.

Sept. 26, 1989.

Order of Sanctions Against Plaintiff
Oct. 12, 1990.

Lloyd G. Perry, Newburgh, Ind., pro se.

Ted Lockyear, Lockyear & Lockyear, Evansville, Ind., for Hart & Emison.

Robert Spear, Deputy Atty. Gen., Indianapolis, Ind., for all other defendants.

TINDER, District Judge.

MEMORANDUM ENTRY ON THE FOLLOWING:

THE DENIAL OF PLAINTIFF'S "PETITION TO SETTLE BY STIPULATION," "PLAINTIFF'S EMERGENCY MOTION FOR SPEEDY HEARING AND TO ADVANCE THE CALENDAR," "PLAINTIFF'S MOTION TO RECONSIDER AND/OR PETITION FOR REHEARING" FILED DECEMBER 22, 1988, PLAINTIFF'S "MOTION TO RECONSIDER AND/OR PETITION FOR REHEARING" FILED APRIL 27, 1989, AND THE STATE DEFENDANTS' REQUEST FOR ATTORNEY'S FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988 (1982);

THE GRANTING OF "PLAINTIFF'S MOTION TO AMEND BY SUBSTITUTION PLAINTIFF'S REPLY BRIEF PURSUANT TO ORDER OF MAY 11, 1989," THE MOTION TO DISMISS FILED BY DEFENDANTS HART AND EMISON, THE STATE DEFENDANTS' MOTION TO DISMISS, AND THE DEFENDANTS' REQUESTS FOR SANCTIONS;

THE OVERRULING OF "PLAINTIFF'S OBJECTION, IN PART, TO THE ORDER VACATING JUDGMENT, DATED MAY 11, 1989;" AND

THE ORDERING OF DEFENDANTS' ATTORNEYS TO SUBMIT ITEMIZED STATEMENT OF FEES AND COSTS AS BASES FOR IMPOSING SANCTIONS, AND AN INJUNCTION AGAINST THE PLAINTIFF

This matter comes before the court on plaintiff Lloyd G. Perry's pro se motion entitled "Plaintiff's Motion to Reconsider and/or Petition for Rehearing" (Motion to Reconsider I) filed on December 22, 1988.

I. *Background*

On December 14, 1988, this court issued an entry that explained the granting of the motion to dismiss filed by the members of the Commission on Judicial Qualifications and the Disciplinary Commission of the Supreme Court of Indiana and certain staff members.[1] The basis for the dismissal was that Perry lacked standing to bring this damages action pursuant to 42 U.S.C. § 1983 (1982) against these seventeen defendants. However, the entry also discussed other serious flaws that marked Perry's cause of action: the application of the eleventh amendment and judicial and prosecutorial immunity. With regard to the eleventh amendment, this court stated that the enactment of section 1983 did not abrogate the states' eleventh amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979),[2] and Indiana has not waived its immunity. Ind. Code § 34–4–16.7–3 (1988); *see also Sheets v. Indiana Dep't of Corrections*, 656 F.Supp. 733 (S.D.Ind.1986). Thus, to the extent that Perry argued that the defendants were liable for damages due to their official capacities, the eleventh amendment bars the action.

In an entry dated April 19, 1989, this court denied plaintiff's Motion to Reconsider I; however, as plaintiff correctly points out in his second "Motion to Reconsider and/or Petition for Rehearing" (Motion to Reconsider II) filed April 27, 1989, I failed to address plaintiff's contention that the state's eleventh amendment immunity had been waived. While the basis of the dismissal was the lack of standing and not the application of the eleventh amendment, this aspect of plaintiff's motion to reconsider was the subject of the oral argument on May 11, 1989.

In presenting his oral argument to the court, however, Perry cited, for the first time, the case of *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), which held, in part, that the Virginia Supreme Court and its members were immune from a section 1983 lawsuit when acting in their legislative capacity, but were proper defendants in a suit for declaratory or injunctive relief when acting in their enforcement capacities. Perry's citation of this case and his oral argument raised the question of whether he was seeking, in part, an injunction to require these defendants to act and a declaratory judgment that certain Indiana statutes, which address the practice of law, are unconstitutional. In keeping with the well-settled law that a pro se plaintiff's pleadings must be given a broad construction, *see Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 378 (7th Cir. 1988); *Murphy v. Lane*, 833 F.2d 106 (7th Cir.1987), this court decided that it should give additional consideration to any claim for injunctive or declaratory relief that Perry may be seeking. Accordingly, this court vacated the judgment on May 11, 1989, that was entered against Perry as to all of the defendants and took under advisement Perry's Motion to Reconsider I, as well as his Motion to Reconsider II.

---

**1.** This court entered judgment on April 19, 1989, against the plaintiff as to all of the defendants.

**2.** After this court issued its entry on December 14, 1988, the United States Supreme Court decided the case of *Will v. Michigan Department of State Police*, ── U.S. ──, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), in which it reaffirmed that states and state officials acting in their official capacities are not "persons" who may be sued under section 1983.

This entry will first address Perry's objection to the vacation of judgment and then the issues regarding Perry's request for monetary relief and the issues regarding his request for injunctive and declaratory relief.[3] Finally, this entry will address all other pending matters so that this court can enter final judgment.

## II. *Plaintiff's Objection to Vacation of Judgment*

■ As this court noted in its Order Vacating Judgment dated May 11, 1989, the new issues to be addressed only affect the seventeen defendants other than defendants Russ Hart and Rabb Emison who were sued in connection with their conduct as Indiana State Bar Association presidents. On May 15, 1989, Perry filed "Plaintiff's Objection, in Part, to the Order Vacating Judgment, Dated May 11, 1989," in which he argued that Hart and Emison were proper defendants under the principles of *Consumers Union* because of their enforcement role. Perry wrote, "[*Consumers Union*] is clearly a showing that the State Bar of Virginia and Indiana State Bar Association and these defendants Hart and Emison have almost identical enforcement roles."

Neither the Virginia State Bar, nor its president, was a defendant in *Consumers Union*. Thus, even if the Virginia and Indiana State Bar Associations have similar roles in the attorney disciplinary scheme, the Court did not hold that the Virginia State Bar was subject to injunctive relief in a section 1983 suit. Furthermore, as this court stated in its Memorandum Entry on

Motion to Dismiss by Defendants Hart and Emison dated November 17, 1988, even if plaintiff has standing to bring such an action, he has failed to show a sufficiently close nexus to establish the Indiana State Bar Association and Hart and Emison as state actors for purposes of section 1983. Thus, his suit against Hart and Emison for monetary, as well as injunctive and declaratory relief, fails. Accordingly, this court OVERRULES "Plaintiff's Objection, in Part, to the Order Vacating Judgment, Dated May 11, 1989" and will only consider the remaining issues as they affect the other seventeen defendants.

## III. *Request for Monetary Relief*

■ Most of the issues related to Perry's claims for monetary relief have been fully briefed by the parties and addressed in previous entries by this court. Thus, this entry incorporates the Memorandum Entry on Motion to Dismiss by Defendants Hart and Emison dated November 17, 1988, and the Memorandum Entry on Motion to Dismiss dated December 14, 1988, which discussed the Motion to Dismiss filed by the other seventeen defendants. The only issue regarding his request for damages that this court needs to address is the plaintiff's contention that the state's eleventh amendment immunity has been waived.

Perry argues in his Motion to Reconsider II that Indiana has waived its eleventh amendment immunity. While it was not clear in his complaint, it is apparent from his argument that Perry is indeed suing the state through the actions of its officers in their official capacities.[4] If the defendants

---

**3.** In this court's Order Vacating Judgment, I ordered the parties to brief specific issues. On June 16, 1989, Perry filed "Plaintiff's Reply Brief Pursuant to Order of May 11, 1989." On June 19, 1989, however, Perry filed "Plaintiff's Motion to Amend by Substitution Plaintiff's Reply Brief Pursuant to Order of May 11, 1989" in which he stated that he had inadvertently filed his rough draft brief instead of his finished brief. This court now GRANTS "Plaintiff's Motion to Amend by Substitution Plaintiff's Reply Brief Pursuant to Order of May 11, 1989" and will refer to the amended brief in this entry.

**4.** In "Plaintiff's Reply Brief Pursuant to Order of May 11, 1989 (amended)," he seems to argue

that these defendants must choose to "either protect Perry" by disciplining the various lawyers and judges of which he has complained or "stand liable." He goes on to state, "[S]hould there be a refusal to cooperate or to discipline there stands the clear amount of damages to be applied to these herein defendants, and not necessarily to be paid by the State Treasury." Perry then cites *O'Brien v. Galloway,* 362 F.Supp. 901 (D.Del.1973) and *Fanty v. Pennsylvania,* 551 F.2d 2 (3d Cir.1977), *cert. denied,* 440 U.S. 957, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979). In *O'Brien,* the district court declined to dismiss the plaintiff's cause of action for damages against the police commissioner and the mayor in their individual capacities under section

were being sued in their individual capacities, the eleventh amendment would not bar the action, and thus, waiver would not be at issue. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Brunken v. Lance*, 807 F.2d 1325, 1329 (7th Cir.1986) (If the section 1983 action is for monetary relief that would require damages to paid out of the state treasury to remedy past wrongs, the eleventh amendment bars such an action in the absence of a waiver by the state or a valid override by Congress.); *cf. Meadows v. Indiana*, 854 F.2d 1068, 1069 (7th Cir.1988) (quoting *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir.1985)) ("[W]here a complaint alleges that the conduct of a public official acting under color of state law gives rise to liability under Section 1983, we will ordinarily assume that he has been sued in his official capacity and only in that capacity.").

Perry cites three Indiana Supreme Court cases in support of his waiver argument. Two cases deal with the issue of whether a party was engaged in the illegal practice of law. *See Hulbert v. Mybeck*, 220 Ind. 530, 44 N.E.2d 830 (1942); *Groninger v. Fletcher Trust Co.*, 220 Ind. 202, 41 N.E.2d 140 (1942). The third case is a disciplinary proceeding against an attorney. *See In re Lee*, 262 Ind. 439, 317 N.E.2d 444 (1974). Perry argues that since the Indiana state courts restrict the practice of law to licensed attorneys, evidenced by the cited cases, this state court regulation of attorneys implicitly waives the state's sovereign immunity. Plaintiff cites *Parden v. Terminal Railway of Alabama State Docks Department*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) as support for his conclusion that once the state becomes involved in the regulation of attorneys, it

waives its immunity regarding such matters.

■ However, Perry fails to acknowledge that *Parden* has been at least partially overruled by the United States Supreme Court in *Welch v. Texas Department of Highways & Public Transportation*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). A strongly divided court held, in pertinent part, that even assuming that Congress can abrogate the eleventh amendment when it acts pursuant to the commerce clause, it must express that intent in *unmistakable* statutory language. Thus, a state may not impliedly waive its eleventh amendment immunity simply by participating in a federal program or concomitantly agreeing to obey federal law. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

Even if *Parden*'s discussion regarding congressional abrogation of eleventh amendment immunity was still good law, *Parden* would not be applicable to Perry's cause of action.

In *Parden*, the issue was whether Alabama, which owned and operated a railroad in interstate commerce, could successfully plead sovereign immunity in a federal suit brought against the railroad by its employee under the Federal Employers' Liability Act (FELA). The Supreme Court, reversing the Fifth Circuit, held that the operation of the common carrier railroad in interstate commerce by the state constituted a waiver of its sovereign immunity. Justice Brennan, writing for the majority, reasoned as follows:

A State's immunity from suit by an individual without its consent has been fully recognized by the Eleventh Amendment and by subsequent decisions of this

---

1983. *However, these cases do not apply to this cause if Perry cites them for the proposition that he is suing these defendants in their individual capacities.*

*It was very clear from Perry's oral argument and his answers to the court's repeated questions on this very issue on May 11, 1989, that he was only alleging that these defendants were liable for their conduct as commissioners and staff members. Thus, this court finds that Per-*

ry's allegations are directed toward the actions of the commission members and specific staff members in their official capacities, rather than in their individual capacities. The applicability of the eleventh amendment "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record." *In re New York*, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921).

Court. But when a State leaves the sphere that is exclusively its own and enters into activities subject to congressional regulation, it subjects itself to that regulation as fully as if it were a private person or corporation.

*Parden*, 377 U.S. at 196, 84 S.Ct. at 1215.

Clearly, *Parden* was read narrowly, *see, e.g., Employees of the Dep't of Pub. Health and Welfare v. Department of Pub. Health & Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), and should not be extended to imply waiver where the state has taken actions that are not subject to extensive federal regulation.

In this case, Perry seeks to imply a waiver because the state regulates the licensing and practice of law. This is clearly a state function over which the federal government does not regulate extensively, unlike the extensive federal regulation of railroad liability under FELA. *See* Ind.Code § 33–2–3–1 (1988) (state legislature grants exclusive jurisdiction to the Indiana Supreme Court to admit or to deny admission to the practice of law in Indiana courts). The federal government does not regulate the qualifications and licensing of attorneys, nor does it decide which attorneys should be disciplined and what punishment should be meted out. Indeed, the federal government is only involved in the practice of law when a state regulation impinges on a federally protected right. *See, e.g., Shapero v. Kentucky Bar Assoc.*, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988) (state violated first and fourteenth amendments by categorically prohibiting direct mail solicitation by attorneys); *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985) (the state rule limiting bar admission to state residents violated the privileges and immunities clause); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) (minimum fee schedule published by county bar violated the Sherman Act). This is not such a case.

After carefully considering Perry's arguments in his Motions to Reconsider I & II, his briefs in support of his motions and his oral argument regarding the state's waiver of its eleventh amendment immunity, this court finds no explicit or implied waiver.

## IV. *Request for Injunctive Relief*

### A. Standing

▪ In the Memorandum Entry on Motion to Dismiss dated December 14, 1988, this court explained that the basis for the dismissal was that Perry lacked standing to bring a section 1983 damages action against these remaining seventeen defendants. Nonetheless, this court must determine if plaintiff has standing to pursue injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (requires that a plaintiff seeking damages and equitable relief must have standing for each kind of relief).

In *Lyons*, the United States Supreme Court made several significant points about standing to seek equitable relief in a section 1983 suit. The plaintiff was stopped for a traffic violation by the police. He did not resist, but the police officers allegedly subjected him to a chokehold, which caused him injury. In addition to monetary relief, the plaintiff sought an injunction against the defendants to bar the use of the chokehold as unconstitutional. He alleged that the police routinely applied this chokehold in nonthreatening situations pursuant to city policy, that many persons had been injured by this policy, that he and others similarly situated were threatened with irreparable injury, and that any future contact that he might have with the police could result in his injury.

The Court held that the plaintiff had not made out an Article III case or controversy sufficient for federal jurisdiction. Even though the plaintiff may have suffered a past wrong, this was not enough to confer standing to pursue injunctive relief. Rather, the crucial question was whether there was "a real and immediate threat" that the plaintiff was likely to suffer personal injury from chokeholds in the future. *Id.* at 95, 103 S.Ct. at 1660. The chance that the plaintiff would be stopped for a routine traffic offense and subjected to a chokehold without just cause was too speculative for the Court to find that the plaintiff had

standing to seek such equitable relief, even though he might have standing to seek damages. *See also Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (past wrongs do not in themselves amount to real and immediate threat of injury necessary to confer standing); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (plaintiffs had no standing to seek an injunction in their claim that they had been subjected to discriminatory enforcement of the criminal law); *Curtis v. City of New Haven,* 726 F.2d 65 (2d Cir.1984); *Brown v. Edwards,* 721 F.2d 1442 (5th Cir.1984).

The essence of Perry's claim in this case is that the state commissions and officials have not disciplined judges and lawyers who were involved at one time or another in Perry's many lawsuits. In his attempt to receive compensation for losses he claims to have suffered because of the commissions' failure to act, he apparently wants this court to enjoin those commission members to discipline the various judges and lawyers against whom Perry has filed complaints. As stated in the December 14, 1988 entry, these defendants did not cause him any harm by their inaction. If they had disciplined the judges and lawyers of whom Perry complained, this would not have changed the outcome of the prior proceedings in which he claims he was abused and defrauded. Perry's alleged injuries would not be redressed by the commissions' imposition of discipline. *See* Ind. Code § 33–2.1–5–19 (1988) (censure, retirement or removal may be imposed if good cause is found); Indiana Rules for Admission to the Bar and the Discipline of Attorneys, Rule 23, § 3 (types of discipline that may be imposed upon an attorney found guilty of misconduct). Even if these defen-

dants had caused Perry harm, however, the likelihood that he would suffer the same harm in the future is mere conjecture.

For Perry to establish an actual controversy in this case in order to obtain injunctive relief, he would have had to make the incredible assertions that he would have another encounter with a lawyer or judge, that *all* lawyers and judges in Indiana are corrupt, that he would file a complaint with either the Commission of Judicial Qualifications or the Disciplinary Commission of The Supreme Court of Indiana, and that such complaint would be ignored without justification by the commissioners. *See Lyons,* 461 U.S. at 105–06, 103 S.Ct. at 1666–67. Perry did not allege such assertions.[5] Thus, Perry has not established a sufficient case or controversy to confer standing in order for him to seek injunctive relief against these defendants.[6]

Since the plaintiff does not have standing to bring this cause of action for equitable relief, this court would not have to address the issues regarding the eleventh amendment and the constitutionality of certain state statutes. However, in order to fully address Perry's concerns, while hopefully making it clear to him that this cause of action is without merit, this court will discuss the remaining issues regarding his request for equitable relief.

**B.  The Eleventh Amendment**

■ The eleventh amendment reads as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or *equity,* commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI (emphasis added).

---

5. If Perry does try to make such assertions, Fed.R.Civ.P. 11 would require him to undertake a formidable investigation or possibly face sanctions for failure to make a "reasonable inquiry" as to the factual basis of such allegations.

6. The plaintiff cites *Galvan v. Levine,* 490 F.2d 1255 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974) for the proposition that for him to have standing to seek a declaratory judgment or injunctive relief, it is important that the action benefit not only him

but all others similarly situated. *Galvan* does state that in an action seeking declaratory or injunctive relief it is important that the judgment runs to the benefit not only of the named plaintiffs, but of all others similarly situated. *Id.* at 1261. However, this was in the context of deciding whether the district court's denial of a request for a class action designation was proper. In this action, Perry must establish a particularized interest separate from the general public in order to pursue this cause of action.

Thus, the eleventh amendment by its terms clearly applies to a suit seeking an injunction. *Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).

As stated above, plaintiff cited the United States Supreme Court case of *Consumers Union* in his oral argument. *Consumers Union* was a section 1983 suit against the Virginia Supreme Court and its chief justice (in his official capacity) challenging on first amendment grounds the court's disciplinary rule for lawyer advertising. The United States Supreme Court found that the Virginia Supreme Court, who was acting in a legislative capacity in promulgating lawyer disciplinary rules, was absolutely immune from section 1983 actions for damages and injunctive relief. *Consumers Union,* 446 U.S. at 731–34, 100 S.Ct. at 1974–76. The Court, however, after expressly leaving open the question of whether judicial immunity barred injunctive relief,[7] held that the Virginia Supreme Court and its chief justice could be sued for injunctive and declaratory relief in their enforcement capacities. *Id.* at 734–37, 100 S.Ct. at 1975–77.

To determine whether plaintiff is entitled to injunctive or declaratory relief under the authority of *Consumers Union* requires this court to determine the nature of the suit brought against the state. *See Brunken,* 807 F.2d at 1328–29. One type of suit is a personal capacity suit against a state official to which the eleventh amendment does not apply, but plaintiff concedes and this court finds that this is not a personal capacity suit. *Id.*

A second type of suit is an official capacity suit against a state official. This type of suit, even when the relief sought is an injunction or a declaratory judgment, does implicate the eleventh amendment. Under the holding of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a federal court may enjoin state officials "to conform their future conduct to the requirements of federal law...." *Quern,* 440 U.S. at 337, 99 S.Ct. at 1143 (citing *Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974)).

A third type of suit is one by a citizen directly against a state entity without naming state officials as defendants. Regardless of the relief sought, the eleventh amendment bars this type of suit unless the state has waived its immunity or Congress has overridden it. *Brunken,* 807 F.2d at 1329.

As stated in the Memorandum Entry on Motion to Dismiss dated December 14, 1988, the defendants in this action are named in the caption in their individual capacities, and the State of Indiana is not named in the complaint. The Indiana Supreme Court Disciplinary Commission and the Commission on Judicial Qualifications, however, are agencies of the state. *See* Ind. Const. art. 7, §§ 4, 9. Furthermore, plaintiff Perry's allegations are directed toward the actions of the commission members and specific staff members in their official capacities, rather than in their individual capacities. The applicability of the eleventh amendment "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record." *In re New York,* 256 U.S. at 500, 41 S.Ct. at 590. As stated above, while it was not clear in his complaint, it is apparent from his argument that Perry is indeed suing the defendants in their official capacities. Perry seeks an injunction to require the defendants to act on his complaints that he filed with both commissions by disciplining the various lawyers and judges that have allegedly wronged him. Such an injunction, however, would have the effect of enjoining two state agencies, as opposed to enjoining a state official "to conform [his or her] future conduct to the requirements of federal law...." *Quern,* 440 U.S. at 337, 99 S.Ct. at 1143 (citing *Edelman,* 415 U.S. at 667–68, 94 S.Ct. at 1357–58).

---

**7.** The United States Supreme Court answered this question left open in *Consumers Union* in *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) in which the Court held that judges acting in their judicial capacities are not absolutely immune from injunctive relief in a section 1983 suit. *See also Scruggs v. Moellering,* 870 F.2d 376 (7th Cir.1989).

In *Brunken,* the Seventh Circuit vacated an injunction that the district court ordered against the Illinois Department of Children and Family Services without naming any individual state officials in its award of injunctive relief. The court stated that "[t]he mere presence of individual defendants in the case does not in any way validate the relief granted by the court below." *Brunken,* 807 F.2d at 1330.

The Seventh Circuit faced a similar situation in *Jensen v. State Board of Tax Commissioners,* 763 F.2d 272 (7th Cir.1985) in which the question on appeal was whether the eleventh amendment applied so as to preclude the district court from granting injunctive relief against the state tax board and/or its individual members. *Jensen,* relying on the structure outlined in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) for analyzing whether a particular suit in fact is a suit against a state, wrote as follows:

> [T]here is little question that the present suit, both as to the State Tax Board and as to its individual members, is a suit against the state of Indiana for Eleventh Amendment purposes.
>
> ... [T]he aim of the ... defendants' suit against the individual State Tax Board members is to compel them to act solely within their capacity as state officials. The real party in interest in this case is therefore the state of Indiana, and the individual members are merely nominal defendants.

*Jensen,* 763 F.2d at 276–77.[8]

In this case, plaintiff cannot circumvent the eleventh amendment by naming in the complaint all of the members of the Commission on Judicial Qualifications and the Disciplinary Commission of the Supreme Court of Indiana (and staff members) "personally" and then request injunctive relief that would compel them to act solely within their capacity as commission members. Since the state has not waived its immunity nor has Congress overridden it, this type of injunctive relief against a state agency would be unconstitutional under the eleventh amendment.[9] *See Brunken,* 807 F.2d

**8.** Perry urges this court to "strike down" *Jensen* because it's holding is allegedly in conflict with the fourteenth amendment. He argues that *Jensen* prohibits all challenges to the constitutionality of state statutes, which is in conflict with the intent of the declaratory judgment procedure. *See Cleaver v. Wilcox,* 499 F.2d 940 (9th Cir. 1974) (the declaratory judgment procedure is successfully used to test the constitutionality of a California state statute). Perry misreads *Jensen* because it does not preclude a declaratory action to challenge the constitutionality of a state statute. In fact it expressly recognizes the exception to the general rule of eleventh amendment immunity drawn from *Ex parte Young* that a suit challenging the constitutionality of a state official's action is not one against the state. *Jensen,* 763 F.2d at 277–79. The *Jensen* court goes on to consider the merits of the appeal because the jurisdictional question of whether *Ex parte Young* applied was so closely related to the question on the merits.

Regardless of the accuracy of Perry's interpretation of *Jensen,* this court will not "strike down" nor ignore a Seventh Circuit Court of Appeals case. "[T]his court does not arrogate unto itself the authority to simply disregard authority so clearly controlling on the ground that it is wrong." *Allen v. American Home Foods, Inc.,* 644 F.Supp. 1553, 1563 (N.D.Ind. 1986).

**9.** In "Plaintiff's Reply Brief Pursuant to Order of May 11, 1989 (amended)," Perry states that these defendants have failed to protect him through "custom or practice." He states that "[a]bsent these customs or practices and the established precedents that goes along with it, of no discipline, Perry would not have been damaged. This is a requirement of proof that Perry has filled with his pleadings and the attached exhibits to the said complaint, in accordance to the latest case laws citing *Consumers [Union]....*" He then cites three cases: *Fraternal Order of Police Hobart Lodge # 121, Inc. v. City of Hobart,* 864 F.2d 551 (7th Cir.1988) (cites to *Consumers Union* when stating that the defendant city council members failed to invoke their absolute legislative immunity in the district court and thus were deemed to have waived it); *Foster v. Walsh,* 864 F.2d 416 (6th Cir.1988) (refers to *Consumers Union* when noting that the Supreme Court did not raise the issue of whether a court is a "person" under section 1983); *Sparks v. Character & Fitness Comm.,* 859 F.2d 428 (6th Cir.1988) (discusses *Consumers Union* in holding that the Kentucky Supreme Court and the Committee on Character and Fitness and its members were absolutely immune in denying the plaintiffs application for admission to the state bar), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989). It is unclear why Perry cites these particular cases. In *Foster,* the Sixth Circuit does refer to the holding in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) that requires a section 1983 plaintiff who

at 1329–30; *see also Krempp v. Dobbs,* 775 F.2d 1319, 1321 (5th Cir.1985) (plaintiffs' claims for injunctive relief, as well as for damages, against the state bar and the State Commission on Judicial Conduct were barred by the eleventh amendment).

## V. *Request for Declaratory Relief*

■ Perry also seeks a declaratory judgment that Ind.Code §§ 33–2–3–1 (1988) and 34–5–2–1 (1988) are unconstitutional. The first statute gives the Indiana Supreme Court exclusive jurisdiction to admit attorneys to practice law in Indiana state courts, and the second statute gives the Indiana Supreme Court the authority to adopt, amend and rescind rules of procedure in the state courts. Perry alleges in his complaint that "because of the Indiana State Statutes of I.C. § 34–5–2–1 and § 33–2–3–1 ... the Indiana Courts of any level do not have to recognize layman pro se nor do the disciplinary commissions, on the bases that the practice of law is restricted to licensed attorneys and laymen pro se are not licensed" and that this somehow violates his constitutional rights. In "Plaintiff's Reply Brief Pursuant to Order of May 11, 1989

(amended)," Perry cites several cases that set out the tests to be applied when deciding whether state statutes are in conflict with federal law. *See Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); *Pennsylvania v. Nelson,* 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956); *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Motor Vehicle Mfrs. Assoc. of the United States, Inc. v. Abrams,* 697 F.Supp. 726 (S.D.N.Y.1988); *CXST, Inc. v. Pitz,* 699 F.Supp. 127 (W.D. Mich.1988), *vacated,* 883 F.2d 468 (6th Cir. 1989); *Morales Feliciano v. Hernandez Colon,* 697 F.Supp. 26 (D.P.R.1987). As discussed earlier, however, the state has not taken actions that are subject to extensive federal regulation, and thus, these cases are inapposite.[10]

■ The Declaratory Judgment Act, 28 U.S.C. §§ 2201 (Supp. IV 1986) and 2202 (1982), and Fed.R.Civ.P. 57 do not confer the necessary subject matter jurisdiction to consider a specific declaratory action; they are procedural and only provide for remedies in suits that are otherwise within a court's jurisdiction. *James v. Ambrose,* 367 F.Supp. 1321 (D.V.I.1973); *Senate Se-*

---

sues a local government to establish that a local government official policy or custom is a cause in fact of the plaintiff's constitutional deprivation. *Id.* at 691–92, 98 S.Ct. at 2035–36. *Monell,* however, does not affect the eleventh amendment's bar against federal court suits for damages and equitable relief brought against states and their agencies. Thus, Perry's allegation that these defendants have a "custom or practice" of disregarding his complaints does not establish an exception to the state's eleventh amendment immunity.

**10.** The plaintiff also cites *Virginia v. American Booksellers Association,* 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) for the proposition that "the United States Supreme Court will not except the legal determination of this Attorney General's opinion of the constitutionality of the said State of Indiana Statutes." This court does not necessarily quarrel with this proposition, but it fails to see the relevance to this cause.

He also cites *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) for the assertion that these defendants are liable for not enforcing state law. In *Berkovitz,* the Court held, in part, that the discretionary function exception to the Tort Claims Act did not bar a claim alleging that the Food and Drug Administration adopted a policy of testing all lots of

oral polio vaccine for compliance with safety standards and preventing the public distribution of any lot that failed to comply and that despite that policy, the FDA knowingly approved the release of an unsafe lot of oral polio vaccine.

It is unclear why Perry cites this case as authority for his request for declaratory relief. This court has read and re-read the plaintiff's complaint, briefs and memoranda to discern his legal arguments. In this instance, Perry seems to be making an estoppel-like argument, though he does not characterize it as such. The argument goes something like as follows: The state controlled the practice of law in its courts and represented that it had authority to license and to discipline attorneys for the protection of the public. As a litigant in state court, Perry relied on the state's representation that it was regulating the practice of law for the protection of the public. Perry was harmed both by the state's licensing of corrupt judges and lawyers and the state's subsequent failure to discipline these corrupt judges and lawyers. Thus, if this court declares the state statutes unconstitutional, then the state is estopped from claiming that it had no authority to discipline in the first place.

Even if this were a sound logical and legal argument, the state would still retain its eleventh amendment immunity from suit for monetary or equitable relief.

*lect Comm. on Presidential Campaign Activities v. Nixon,* 366 F.Supp. 51, 55–56 (D.D.C.1973). The case or controversy requirement applies to actions for declaratory judgments with as much force as it does to actions seeking monetary or injunctive relief. This court can exercise its power to decide upon the constitutionality of a state statute only if the interests of the litigant require the use of this judicial authority for protection against actual interference with his rights. *J.N.S., Inc. v. Indiana,* 712 F.2d 303 (7th Cir.1983). A litigant must show an injury that is "real, not imaginary; concrete, not abstract; apparent, not illusory; and demonstrable, not speculative." *Id.* at 305 (quoting *Myron v. Chicoine,* 678 F.2d 727, 730 (7th Cir.1982)); *see In re Justices of Supreme Court,* 695 F.2d 17, 21 (1st Cir.1982). Furthermore, a litigant must have a practical interest in the declaration and must establish a more immediate threat than simply a general policy of enforcing laws. *Id.; see* Fed.R.Civ.P. 57 advisory committee's note; *cf. Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974) (even though the case for an injunction dissolved with the settlement of the strike, the parties still retain sufficient interests and injury to justify declaratory relief); *Seattle School Dist. Number 1 v. Washington,* 633 F.2d 1338, 1342 n. 1 (9th Cir.1980) (court assumed jurisdiction of a challenge to the constitutionality of a state statute even in the absence of a direct threat of enforcement against the plaintiff), *aff'd,* 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982).

Whether Perry has established that he has standing to challenge the constitutionality of these two state statutes is an important but academic question that this court need not reach because even assuming that Perry does have standing, the statutes have been held to be constitutional in the face of similar challenges. In *Starr v. State Board of Law Examiners,* 159 F.2d 305 (7th Cir.), *cert. denied,* 331 U.S. 830, 67 S.Ct. 1348, 91 L.Ed. 1844 (1947), the plaintiff, who alleged that he had Master of Science and Bachelor of Laws degrees and that he was denied admission to the Indiana bar, sought a declaratory judgment directing the Indiana State Board of Law Examiners and the Indiana Supreme Court to certify him as a member of the bar. The Seventh Circuit held that the right to practice law in state courts was not a privilege granted by the United States Constitution and that the Indiana Supreme Court has exclusive jurisdiction to admit attorneys to practice law in its courts. *See also United States v. Taylor,* 569 F.2d 448 (7th Cir.), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978); *Kimble v. Duckworth,* 583 F.Supp. 1072 (N.D.Ind.1984), *aff'd,* 774 F.2d 1166 (7th Cir.1985), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 577, 88 L.Ed.2d 560 (1985); *Fair v. Givan,* 509 F.Supp. 1086 (N.D.Ind.1981); *Turner v. American Bar Assoc.,* 407 F.Supp. 451 (N.D.Tex., 1975), *aff'd sub nom. Taylor v. Montgomery,* 539 F.2d 715 (7th Cir.1976). Thus, his request for declaratory relief is denied.

### VI. Requests for Sanctions and Attorney's Fees

The defendants who are represented by the Attorney General of Indiana requested in their Motion to Dismiss filed April 13, 1988, that this court award them costs and attorney's fees pursuant to 42 U.S.C. § 1988 (1982) and sanctions pursuant to Fed.R.Civ.P. 11.[11] Defendants Hart and Emison filed a "Motion for Summary Rulings and Request for Additional Sanctions" on May 9, 1989.[12]

The standard for imposing sanctions under Fed.R.Civ.P. 11 is an objective determination of whether a party's conduct was reasonable under the circumstances. *Patterson v. Aiken,* 841 F.2d 386, 387 (11th Cir.1988); *In re Ronco, Inc.,* 838 F.2d 212

---

11. The state defendants reiterated this request in their supplemental brief in support of their motion to dismiss filed June 6, 1989.

12. In an order dated April 19, 1989, this court ordered the plaintiff to pay sanctions of $2,270.00 to the attorney for defendants Hart and Emison: $1,270.00 for expert witness fees and $1,000.00 for attorney's fees. This court also ordered the plaintiff to pay sanctions of $500.00 to the clerk of this court. Plaintiff Perry promptly complied.

(7th Cir.1988); *Brown v. Federation of State Medical Bds.*, 830 F.2d 1429 (7th Cir.1987). "Subjective bad faith is no longer the crucial inquiry." *Brown*, 830 F.2d at 1435.

According to the Seventh Circuit, there are two grounds for sanctions pursuant to Fed.R.Civ.P. 11. *Id.* The first ground is the "frivolousness" clause. *Id.* The *Brown* court then noted that there are two subparts to the frivolousness clause: reasonable inquiry into the facts and reasonable inquiry into the law. *Id.* A violation of either subpart is sufficient to support the imposition of sanctions pursuant to Fed.R.Civ.P. 11. *Id.* The second prong of Fed.R.Civ.P. 11 is the "improper purpose" clause and it "provides that a motion, pleading, or other document may not be interposed for purposes of delay, harassment, or increasing the costs of litigation." *Id.* at 1436.

The advisory committee's notes to Fed.R.Civ.P. 11, as amended, effective August 1, 1983, emphasize that the rule is "intended to reduce the reluctance of courts to impose sanctions" and that "the standard is the same for unrepresented parties [as for attorneys]." *See Miller v. United States*, 669 F.Supp. 906, 910–11 (N.D.Ind.1987), *aff'd*, 868 F.2d 236 (7th Cir.1989); *cf. Bacon v. American Fed'n of State, County, & Mun. Employees Council, #13*, 795 F.2d 33, 35 (7th Cir.1986) (The Seventh Circuit required the pro se plaintiff to pay attorney's fees because his appeal was frivolous. "[W]hen a layman persists in a hopeless cause long after it should have been clear to him, as a reasonable (though not law-trained) person, that his cause was indeed hopeless, sanctions should be imposed, as this and other courts have frequently done in "tax protester" and other frivolous pro se suits."). Thus, even though Perry is acting pro se, this "[does] not serve as an 'impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Patterson*, 841 F.2d at 387 (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358 (5th Cir. 1986)).

## A. Findings of Fact Regarding Sanctions

Perry's legal research is primitive, but probably average for a layperson. It is apparent that he does some research because he cites cases that are in the general area of the issues in this case. However, there is really no evidence that he reads or analyzes the cases because his citations and discussions of the cases seem to focus on the headnotes or editors' summaries rather than the legal reasoning and holdings. A lawyer would have been likely to know that the suit was not legally supportable, but is it fair to say that a reasonable layperson would have known?

Perry knew that he had lost his state court proceedings at the trial level despite his claims of fraud and dishonesty on the part of the lawyers and judges. He also knew that he lost on these same claims on appeal in the state system. He later learned in his other suit in the district court that he had no federal claim against those he believed had wronged him in the state court actions. This was also demonstrated to him by the Seventh Circuit when he lost his appeal. *See Perry v. Gresk*, No. EV 84–174–C (S.D.Ind. February 21, 1986) (unreported), *aff'd*, 805 F.2d 1038 (7th Cir. 1986). The failure of the commissions to mete out the discipline that he sought was also a rejection of his obsessive need for vindication. He then turned to this court again, on a new theory, with all new defendants, but with the same central theme. The gist of his complaint here is a reiteration of his continued quest of exculpation on the state court proceedings.

■ The frustration that the defendants' lawyers must experience from having to deal with Perry is evident. His frequent visits and telephone calls to the court clerk's office and to court personnel are time consuming, and he doesn't easily understand the most routine things that are explained to him. The time that the lawyers and the court must spend on his creative legal concoctions detracts from the time that can be spent on legitimate legal

disputes. But the inducement of frustration is not grounds for the imposition of sanctions.

■ The manner in which he has handled this suit lends itself more clearly to a consideration of the "improper purpose" prong of Fed.R.Civ.P. 11. Even if Perry believed that it had merit, and even if he did everything a layperson should do in researching and investigating a suit of this type, Perry's motives for bringing the suit and handling it in the way that he did are suspect.

With all of the failures he had met in the other proceedings and with the fact that the Seventh Circuit had sanctioned him on the other federal proceeding, he should have been cautious in bringing yet another action related to the same disputes. He turned vituperously on Theodore Lockyear, the attorney for defendants Hart and Emison. Without a factual basis, Perry contended that Lockyear had such a close personal relationship with Judge Brooks, who then presided over this cause, that it interfered with a fair adjudication. He even accused Lockyear of knowingly submitting a false affidavit in this case and sought disciplinary sanctions against him in this court and in the Seventh Circuit Court of Appeals. The affidavit was not false, despite Perry's incoherent insistence to the contrary. No discipline was warranted, and this court determined that disciplinary proceedings are not merited with respect to the Jack Lyle Affidavit.[13] But this was another outlet through which Perry could vent his obsession regarding his litigation failures.

Even within the four corners of the pleadings, he gives indications of improper motives behind the suit. He filed several pleadings seeking an order to force a settlement conference or an order for a hearing to compel a stipulated settlement. There is no authority for a party to force a judge to hold such a conference or hearing and that is not the purpose of a lawsuit, i.e., to obtain a settlement conference. *See* Fed.R.Civ.P. 16. In one letter to Emison dated November 5, 1986, Perry admits that he knows that Hart and Emison did not have anything to do with the problems he was complaining about, yet he continues to pursue them.[14] He also sent at least one letter to the defendants' attorneys in which he makes exorbitant demands, so large that they appear extortionate.[15]

The amounts of his settlement demands and the way that he phrases them make them out to be only slightly veiled extortion demands. This leads me to conclude that the suit, whether Perry believed it was based on a valid legal theory or not, was nothing more than a device to enable him to harass, cajole, intimidate and extort the defendants into giving him undeserved sums of money or to bring undeserved shame on those involved in the underlying state disputes and on anyone who would not help him do so. If the suit was not consciously pursued for such purposes, it must have been the product of a delusional thought pattern, complete with fears of

13. See this court's Memorandum Entry and Order dated September 8, 1988, in which I discuss and then deny Perry's request for disciplinary proceedings against attorney Lockyear regarding, among other things, the allegations regarding the affidavit of Jack Lyle.

14. In at least one telephone call to the office of the clerk of this court, Perry complained of frustration with the legal system and alluded to feeling as though the pressure of the forces acting against him in matters related to this suit would result in his responding through "self-help or violence" to obtain the relief he sought. I do not consider this conversation as a key factor in deciding upon the appropriateness of sanctions, however, it is helpful in evaluating the context of Perry's other conduct in connection with this case.

15. For example, Perry states in a letter dated June 7, 1988, addressed to the defendants' attorneys that "[e]ither [Perry] can settle the matter by these offers [of settlement for $14,000,-000.00] as forthsaid or he can go after the careers of each of the defendants and Judge Brooks by use of declaratory judgments and petitions to the United States House and Senate, taking both United States Senators, Richard G. Lugar and Daniel Quaile [sic] in the same process for corrupt influence and influence peddling in relation to disrupted legal processes in relation to Lugars [sic] one time Chief Staff Attorney Paul D. Gresk."

being followed and the imagination of conspiracies to falsify documents.[16]

### B. Conclusion on Sanctions and Attorney Fees

In light of the circumstances presented in this suit and with respect to the fact that he was sanctioned for the frivolous nature of the appeal of the related prior federal proceeding, this court will award sanctions for the abusive and improper things that he did here. Therefore, this court ORDERS the defendants to submit an itemized statement of attorney's fees and costs within ten days from the date of the issuance of this entry.[17] This court will then order plaintiff Perry to pay a certain amount to the defendants' attorneys based upon this court's calculation of their reasonable fees and costs.

▇ The state defendants requested attorney's fees pursuant to section 1988. The Civil Rights Attorney's Fees Awards Act of 1976, codified as an amendment to section 1988, provides as follows: "In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... the court, *in its discretion, may* allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1982) (emphasis added). As emphasized, an award under section 1988 is discretionary, while a district judge has no similar discretion under Fed.R.Civ.P. 11, which says that the judge "shall" impose sanctions on offending parties and lawyers. *Frantz v. United States Powerlifting Fed'n*, 836 F.2d 1063 (7th Cir.1987). This court's award of attorney's fees to the state defendants pursuant to Fed.R.Civ.P.

11 causes this court to DENY the state defendants' section 1988 fee request to avoid a double reimbursement to these attorneys. However, this is not a finding that the defendants have failed to establish that "the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).[18]

### VII. *Defendants' Request for Injunctive Relief*

▇ In Hart's and Emison's memorandum in support of their motion to dismiss filed March 21, 1988, they assert that Perry should be enjoined from filing "any other frivolous actions," in part to protect themselves, and in part to protect others who in the future Perry may imagine to be sources of persecution.

Hart and Emison cite District Judge Lee's opinion in the case of *Hilgeford v. Peoples Bank, Inc.*, 652 F.Supp. 230 (N.D. Ind.1986) as an example of judicial management of a problem of this nature. Judge Lee fashioned an effective injunction against a pro se litigant with a history of nonsensical and vexatious litigation who had not responded to sanctions in earlier cases. Indeed, the situation posed by the litigious plaintiff Hilgeford is similar in many respects to the situation posed by Perry.

Other federal courts faced with such vexatious litigants have also enjoined further abuse of the legal system under the authority of 28 U.S.C. § 1651(a) (1982), which states as follows: "The Supreme Court and

---

**16.** For example, this court held a hearing on December 1, 1988 on plaintiff's claim that an affidavit that he had filed in this case regarding the recusal of Judge Brooks had been tampered with. See this court's Entry on Plaintiff's Recusal Affidavit and Order of Sanctions both dated April 19, 1989. When it became apparent, however, that this court was going to hold a hearing, Perry resisted going forward with it and tried to argue that it was moot since Judge Brooks had recused himself. It would be fair to say that this is an indication of his awareness of the falsity of his allegations. During the hearing, Perry accused Attorney Lockyear of having employed someone to follow Perry. The findings I

entered after that hearing are also incorporated herein by reference.

**17.** As noted above, Perry has already paid attorney Lockyear $1,270.00 for expert witness fees and $1,000.00 for attorney's fees. Of course, this court will take that into consideration in computing the additional sanctions to be awarded to Lockyear.

**18.** The motion for summary rulings filed on May 9, 1989, by defendants Hart and Emison is DENIED as moot.

all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See, e.g., Green v. Warden,* 699 F.2d 364 (7th Cir.), *cert. denied,* 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *Miller,* 669 F.Supp. 906; *English v. Cowell,* 117 F.R.D. 128 (C.D.Ill.1987); *cf. In re Hartford Textile Corp.,* 659 F.2d 299, 305 (2d Cir.1981) ("[T]he United States Courts are not powerless to protect the public, including litigants who appear before the Courts, from the depredations of those … who abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive … proceedings."), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

Because the problems arise from the obsession that Perry has with the underlying state court disputes and his futile efforts to relitigate those issues in the federal arena, a limitation on his ability to file future lawsuits is appropriate. *See Hilgeford,* 652 F.Supp. 230. The injunction will prohibit certain filings not only by Perry but by anyone acting on his behalf and will encompass any lawsuit arising out of or related to any of the matters decided in the case of *Perry v. Gresk,* No. EV 84–174–C (S.D.Ind. February 21, 1986) (unreported), *aff'd,* 805 F.2d 1038 (7th Cir.1986) (unreported), as well as the matters decided in this cause of action.

Of course, Perry will not be absolutely barred from bringing suit in this or any other federal court; the injunction only requires that he inform the court of this injunction and of previous litigation against the named defendants and that he obtain leave of court to file any new action when he seeks to file a suit arising out of or related to this action or the suit in EV 84–174–C. Procedures for obtaining leave of court are set forth in the accompanying order. Failure to comply with any of the terms of the injunction will amount to contempt of this court and will be punished accordingly. Any defendant who believes that Perry is not complying with the injunction may file an affidavit to that effect with the Clerk of the Court, Southern District of Indiana, Evansville Division, under the EV 88–24–C docket number.[19]

To the extent that he names different parties and that this is only his second round in federal court, he does have the state experiences, and regardless of the number of times he brings these types of suits, each one can be abusive. A plaintiff is not permitted to file a minimum number of vexatious and redundant lawsuits before a court can impose such an injunction. I conclude that Perry brought this suit and pursued the settlement efforts and the disciplinary complaints for improper purposes. He went well beyond what a reasonable person not trained in the law would or should have done. An injunction preventing the filing of additional lawsuits by this plaintiff regarding issues that have already been addressed in previous lawsuits is necessary to protect this court's jurisdiction and to prevent further harassment to defendants from having to defend against Perry's groundless claims.

## VIII. *Conclusion*

Based upon the above-stated reasons, as well as the reasons stated in this court's Memorandum Entry on Motion to Dismiss by Defendants Hart and Emison dated November 17, 1988, and the Memorandum Entry on Motion to Dismiss dated December 14, 1988, this court will GRANT the defendants' motions to dismiss and DENY both of plaintiff's motions to reconsider.[20] This

---

**19.** This is not an injunction pursuant to Fed.R. Civ.P. 65, and thus, the defendants do not need to post a bond or give any other type of security.

**20.** There are several outstanding motions that can be addressed as follows. On April 28, 1989, Perry filed a "Petition to Settle by Stipulation" and a supporting brief. This court does not have the authority to force the parties in any

lawsuit to settle. Thus, plaintiff's "Petition to Settle by Stipulation" is DENIED.

On June 22, 1989, Perry filed "Plaintiff's Emergency Motion for Speedy Hearing and To Advance the Calendar" and a supporting brief. While this court regrets any frustration that Perry has suffered, he did not present a sufficient "emergency" for this court to hold a hearing or to "advance the calendar," though this

entry addresses all of the issues in this cause, and final judgment will be entered for the defendants and against the plaintiff.

The defendants are ordered to submit within ten days from the date of the issuance of this entry an itemized statement of their attorneys' fees and costs. This court will then issue an order requiring Perry to pay sanctions to the defendants in the amount of their reasonable attorneys' fees and costs.

Finally, this court will issue an order with this entry and the judgment enjoining the plaintiff from abusing the judicial process by trying to litigate issues that have already been decided.

## ORDER OF SANCTIONS
## AGAINST PLAINTIFF

This matter comes before the court on the Verified Petition for an Award of State Defendants' Attorney Fees filed October 5, 1989, and the Verified Petition with Respect to the Potential Award of Attorney Fees Incurred on Behalf of Defendants, Emison and Hart filed October 10, 1989. These petitions were filed in response to this court's judgment against plaintiff Lloyd G. Perry pursuant to Fed.R.Civ.P. 12(b)(6) and decision to award sanctions pursuant to Fed.R.Civ.P. 11 for the abusive and improper things that Perry did throughout the course of this litigation. Accordingly, this court ordered the defendants to submit an itemized statement of attorney's fees and costs so that this court could impose sanctions against Perry based upon the defendants' reasonable fees and costs. *See* Fed.R.Civ.P. 11 (specifically permits the district court to order a party who violates the rule to pay his or her opponent "the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee").

■ Determining what constitutes "reasonable expenses" and a "reasonable attorney's fee" as set out in Fed.R.Civ.P.

11 requires the consideration of the rule's goals of deterrence, punishment, and compensation. In this context, "reasonable" does not necessarily mean actual expenses. *See, e.g., Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 879 (5th Cir.1988); *Brown v. Federation of State Medical Bds. of the United States,* 830 F.2d 1429, 1440 (7th Cir.1987) (an offending party is not always required to pay all the fees and costs that could be assessed, but a court must assess costs and fees in light of the purposes of Fed.R.Civ.P. 11); *Brown v. Baden (In re Yagman),* 796 F.2d 1165, 1185 (9th Cir.1986).

■ In cases involving substantial awards, the Seventh Circuit requires the district court to state with some specificity the reasons for the imposition of a sanction and the manner in which the sanction was computed. *Brown v. Federation of State Medical Bds. of the United States,* 830 F.2d at 1438. The awarded sanctions must be quantifiable and itemized in terms of the misconduct and the sanctioning authority, which requires a district court to incorporate it's findings and conclusions so that an appellate court can effectively review the reasons for the award. *Id.* However, if the district court chooses to give a small portion of the requested fees in order to deter and to punish the frivolous litigator, as opposed to compensating the parties that are targets of such litigation, then the court does not have to make specific findings. "The specific findings requirement would not be appropriate when the imposition of modest sanctions is solely for the purpose of deterrence." *Id.* at 1439. Of course, this court is ever mindful that sanctions should not be imposed impulsively and that the least severe sanctions to accomplish the purpose should be awarded. *Id.* at 1437.

■ In this case, the state defendants request that they be compensated for a total of 36.35 hours of attorney's fees at a rate of $100.00 per hour, which equals

court notes that this case has been advanced well ahead of older cases on the court's docket. This entry addresses all of the issues in this

cause. Therefore, "Plaintiff's Emergency Motion for Speedy Hearing and To Advance the Calendar" is DENIED as moot.

$3,635.00. The state has submitted an itemized time sheet of its hours spent on this case, as well as two affidavits from attorneys who are familiar with the hourly fee reasonably charged by attorneys who practice civil rights law in Indianapolis. Theodore Lockyear, attorney for defendants Russell Hart and Rabb Emison, stated that he has devoted in excess of 160 hours on this litigation. He did not, however, submit an itemized time sheet or any affidavits as to what constitutes a reasonable hourly rate.

This court fully believes that the state spent 36.35 hours and that Lockyear spent at least 160 hours defending against Perry's cause of action. This court also spent in excess of 160 hours on this litigation. Furthermore, this court believes that $100.00 per hour is a reasonable attorney's fee in this case. While this court is mindful of the large amount of time that the defendants' attorneys have spent on this litigation, however, equitable considerations cause this court not to order Perry to reimburse the defendants for the full amount of attorney's fees. Perry is a pro se plaintiff, who has previously paid sanctions that this court awarded to Lockyear and to the clerk of the court.[1] An additional award of $16,000.00 to Lockyear and $3,635.00 to the state on behalf of the defendants would be overly burdensome to Perry.[2] Thus, this court is not awarding sanctions in order to compensate the defendants. The purpose of this monetary sanction is to deter Perry from filing such frivolous, vexatious lawsuits in the future.[3]

Therefore, based upon the findings of fact and conclusions of law in this court's memorandum entry dated September 29, 1989, and the goal of deterring Perry from using the court system for improper purposes by filing vexatious lawsuits, this court ORDERS plaintiff Lloyd G. Perry to pay by money order, within thirty days of the date of this order, the sum of $1,000.00 to the attorney for defendants Hart and Emison, Theodore Lockyear of Evansville, Indiana. This court further ORDERS plaintiff Lloyd G. Perry to pay by money order, within thirty days of the date of this order, the sum of $1,000.00 payable to the State of Indiana and delivered to attorney Robert Spear at the Office of the Attorney General, Indianapolis, Indiana.

This sanction hopefully will remind Perry, if he feels compelled to relitigate these issues in the future, that this cause of action has been fully addressed by a court of law and has been found to be not only meritless, but also patently frivolous.

---

1. See the Order of Sanctions dated April 19, 1989, in which this court awarded sanctions in the amount of $2,270.00 to attorney Lockyear and $500.00 to the clerk of the court pursuant to Fed.R.Civ.P. 11. Perry promptly paid.

2. Additionally, this court could not award $16,000.00 to Lockyear for his attorney's fees because he has failed to adequately document his time.

3. This was also the purpose of this court's injunction against Perry, which enjoined him from filing any suit against certain defendants or any suit on a previously litigated issue without first following certain procedures in order to obtain leave of court to file such a suit.