Gerald M. SPARKS, Plaintiff-Appellant,

v.

CHARACTER AND FITNESS COMMITTEE OF KENTUCKY, et al., Defendants-Appellees.

No. 85-5629.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 15, 1988.

Decided Oct. 18, 1988.

Gerald M. Sparks, Louisville, Ky. (argued), pro se.

William A. Barth, John T. Ballantine (argued), Louisville, Ky., for defendants-appellees.

Before ENGEL, Chief Judge,* and KRUPANSKY and RYAN, Circuit Judges.

RYAN, Circuit Judge.

This case has been returned to us by the United States Supreme Court which vacated our earlier judgment and directed that we give the matter "further consideration" in light of *Forrester v. White*, 484 U.S. ——, 108 S.Ct. 538, 98 L.Ed.2d 555; —— U.S. ——, 108 S.Ct. 744, 98 L.Ed.2d 757 (1988). We have done so and now hold that the Supreme Court's opinion in *Forrester* is entirely distinguishable from this case and, therefore, does not require that we change our previous decision. *See Sparks v. Character & Fitness Comm.*, 818 F.2d 541 (6th Cir.1987). Accordingly, we once again affirm the district court's dismissal of plaintiff's complaint.

**I.**

Plaintiff Sparks filed a complaint in the district court on March 1, 1985 against the chief justice of the Kentucky Supreme Court, a member of the Board of Law Examiners, the Kentucky Character and Fitness Committee, its members, and two of its employees. The complaint alleged violations of various constitutional rights pursuant to 42 U.S.C. § 1983, and asserted several state law claims arising out of the Kentucky Supreme Court's refusal to admit Sparks to membership in the bar of the state of Kentucky.

In our earlier decision, we described the factual background for Sparks' lawsuit as follows:

> Sparks averred that in 1980, when he was first a candidate for admission to the Kentucky bar, he was interviewed, pursuant to Kentucky Supreme Court Rule 2.040, by Junius J. Beaver, Jr., an associate member of the [Kentucky Character and Fitness] Committee. At the conclusion of the interview, Mr. Beaver addressed a letter to the Kentucky State Board of Bar Examiners stating that because Sparks was not possessed of the requisite character and moral fitness, he could not recommend that Sparks take the upcoming Kentucky Bar Examination.
>
> Sparks contends that despite Mr. Beaver's adverse recommendation, of which Sparks had no knowledge, "the powers that be still allowed him to take the Kentucky Bar exam four times ... knowing full well that the plaintiff had been blackballed." Sparks failed the bar examination three times; his fourth examination was never graded.

818 F.2d at 542.

The district court dismissed the action against the Honorable Robert F. Stephens, Chief Justice of the Kentucky Supreme Court, on the ground that Chief Justice Stephens was entitled to absolute immunity because consideration of an application for admission to the bar is a judicial act for which a judge cannot be held liable in damages. The district court also dismissed the action against the remaining defendants, holding that given the extensive authority exercised over the Board of Bar Examiners and the Character and Fitness Committee by the Kentucky Supreme Court, the actions of the Board of Bar Examiners and the Committee relating to Sparks' application for admission to the bar "cannot be divorced from the actions of the Supreme

* The Honorable Albert J. Engel assumed the   duties of Chief Judge effective April 1, 1988.

Court of Kentucky" and are also "clothed with judicial immunity." The district court therefore dismissed plaintiff's complaint.

On appeal, we affirmed the district court's holding. 818 F.2d 541 (6th Cir. 1987). After noting, *inter alia*, that the Kentucky Constitution charges the Kentucky Supreme Court with the duty to "govern admission to the bar and the discipline of members of the bar," Ky.Const. of 1891, § 116 (1976), we held that "the act of considering an application for admission to the bar, particularly when that duty is imposed upon the judiciary by constitution, is a judicial act. When it is performed by a judge, he or she is entitled to absolute judicial immunity." 818 F.2d at 543. Our reasoning, in part, was as follows:

In [*Stump v.*] *Sparkman* [435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978)], the Supreme Court stated:

"The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."

. . . .

The power to determine who should practice before the courts has been aptly summarized by Chief Justice Taney:

"And it has been well settled, by the rules and practice of common-law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed."

*Ex parte Secombe*, 60 U.S. (19 How.) 9, 13 [15 L.Ed. 565] (1856). This power is not only exclusive; it is inherently judicial. *Simons v. Bellinger*, 643 F.2d 774, 780 (D.C.Cir.1980). *Accord Louis v. Supreme Court of Nevada*, 490 F.Supp. 1174, 1182 (D.Nev.1980); *Galahad v. Weinshienk*, 555 F.Supp. 1201, 1204 (D.Colo.1983).

. . . .

The court's exercise of its inherent power to choose its officers is substan-

tially determinative of the character and quality of our entire judicial system, state and federal. Our system of justice depends, in substantial measure, upon the service of competent and qualified attorneys. The decision whether to admit or deny an applicant admission to the bar, and thus to determine the composition and quality of the bar, affects both the quality of justice in our courts and the public's perception of that quality. The decision is therefore integral to the very essence of the judicial process.

818 F.2d at 542–43. We therefore affirmed the district court's dismissal of the plaintiff's complaint against the chief justice of the Kentucky Supreme Court. *Id.* at 543.

We then addressed the question whether the remaining defendants, who are not judges, nevertheless enjoy immunity for their activities with regard to plaintiff's application for admission to the Kentucky bar. We explained in some detail that since the "nonjudicial" defendants were acting pursuant to a command imposed upon them by the Kentucky Supreme Court under a provision of the Kentucky Constitution, their actions, at the very least, were quasi-judicial and, that being so, they were entitled to absolute immunity as well. We stated, in part:

Public policy requires "absolute immunity ... for all persons—governmental or otherwise—who [are] integral parts of the judicial process." *Briscoe v. La-Hue*, 460 U.S. 325, 335 [103 S.Ct. 1108, 1115, 75 L.Ed.2d 96] (1983). In *Campbell* [*v. Patterson*, 724 F.2d 41, 43 (6th Cir.1983)], we held that Michigan's Attorney General, obligated by statute to perform duties of a quasi-judicial nature, enjoys absolute immunity even when the action taken is erroneous.

A survey of the case law reveals that public policy requires absolute immunity for public officials performing quasi-judicial functions in a number of circumstances. It has been granted to members of an attorney disciplinary committee, *Simons*, 643 F.2d at 780; to a state bar association conducting disciplinary proceedings, *Clark v. State of Washing-*

*ton,* 366 F.2d 678 (9th Cir.1966); to lawyers serving on a mediation panel, *Mills v. Killebrew,* 765 F.2d 69 (6th Cir.1985); to the court's clerk for acts within the scope of his quasi-judicial duties, *Denman v. Leedy,* 479 F.2d 1097 (6th Cir. 1973); to "friends of the court," *Johnson v. Granholm,* 662 F.2d 449 (6th Cir. 1981), *cert. denied,* 457 U.S. 1120 [102 S.Ct. 2933, 73 L.Ed.2d 1332] (1982); and to prosecutors engaging in prosecutorial activity, *Imbler v. Pachtman,* 424 U.S. 409 [96 S.Ct. 984, 47 L.Ed.2d 128] (1976).

. . . .

In *Hoover* [*v. Ronwin,* 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984)], the plaintiffs, who had failed the Arizona Bar Examination, brought suit against the members of the Arizona Supreme Court Committee on Examinations and Admissions, alleging that the committee members had conspired to restrain trade in violation of the Sherman Act by artificially reducing the number of competing attorneys in Arizona. The Supreme Court determined that the actions of the committee members, in using a grading formula to determine admissions to the bar, could not be divorced from the actions of the Arizona Supreme Court. The Court noted that the members were appointed by the supreme court and the court "retained strict supervisory powers and ultimate full authority over its actions." *Id.* at 572 [104 S.Ct. at 1997]. The Court concluded that the conduct challenged was "in reality that of the Arizona Supreme Court," and therefore, the committee members were absolutely immune from anti-trust liability under the doctrine of sovereign immunity announced in *Parker v. Brown,* 317 U.S. 341 [63 S.Ct. 307, 87 L.Ed. 315] (1943). *Hoover,* 466 U.S. at 573. [104 S.Ct. at 1997].

Similarly, in the *Simons* case, two attorneys sued the members of the District of Columbia Court of Appeals Committee on Unauthorized Practice of Law. They alleged that the defendants maliciously harassed them during an illegal investigation of their law practice. The court concluded that the committee members'

work was "functionally comparable to the work of judges ... they serve as an arm of the court and perform a function which traditionally belongs to the judiciary." 643 F.2d at 781.

. . . .

The acts complained of in this case were performed by the defendants in obedience to duties imposed upon them by the Kentucky Supreme Court which is charged under the Kentucky Constitution with the obligation to enact rules "govern[ing] admission to the bar and discipline of members of the bar." In response to this constitutional command, the Kentucky Supreme Court adopted Supreme Court Rule 2.000 creating the Board of Bar Examiners and describing its duties, and Rule 2.040 creating the Committee on Character and Fitness, determining its composition, and defining its duties. These rules require, in sum, that the respective committees, their members and staff personnel, act on behalf of the Kentucky Supreme Court in administering procedures for admission to the bar of Kentucky and in determining the character and fitness of applicants as a condition precedent to the admission. In executing these duties, the committee members and staff personnel act under the direct supervision of the Kentucky Supreme Court and in its name. Their activities cannot be separated from the actions of the Supreme Court of Kentucky. The actions of the defendants in this are, therefore, not only "functionally comparable" to judicial duties, they are the functional equivalent."

*Id.* at 543–44. We concluded that:

The act of considering an application to the bar is a judicial act. And it is no less a judicial act simply because it is performed by nonjudicial officers in whom the responsibility for the performance of such duties is lawfully delegated by the judiciary. Therefore, those who perform those duties on behalf of the judiciary are entitled to the same judicial immunity as would be enjoyed by judicial officers performing the same act.

*Id.* at 544–45. We determined, in other words, that whether a function is a judicial act is determined by the nature of the function, not the office of the actor.

In obedience to the Supreme Court's order, — U.S. ——, 108 S.Ct. 744, 98 L.Ed.2d 757, we now reconsider our decision in light of *Forrester.*

## II.

In *Forrester,* plaintiff brought a 42 U.S. C. § 1983 action against a state court judge, alleging that she was demoted and later discharged from her position as a probation officer because of her sex, in violation of the Equal Protection Clause of the fourteenth amendment. Under Illinois law, the defendant judge had authority to hire and fire such officers at his discretion. The Supreme Court held that the judge was not protected from liability by absolute judicial immunity because it was "clear that Judge White was acting in an administrative capacity when he demoted and discharged Forrester." 484 U.S. at ——, 108 S.Ct. at 545, 98 L.Ed.2d at 566. In reaching this holding, the Court observed:

> When applied to the paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court, the doctrine of absolute judicial immunity has not been particularly controversial. Difficulties have arisen primarily in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges. Here, as in other contexts, immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches.
>
> This Court has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity. The decided cases, however, suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform. Thus, for example, the informal and *ex parte* nature of a proceeding has not been thought to imply that an act

otherwise within a judge's lawful jurisdiction was deprived of its judicial character. *See Stump v. Sparkman,* 435 U.S. 349, 363 n. 12 [98 S.Ct. 1099, 1108 n. 12, 55 L.Ed.2d 331] (1978). Similarly, acting to disbar an attorney as a sanction for contempt of court, by invoking a power "possessed by all courts which have authority to admit attorneys to practice," does not become less judicial by virtue of an allegation of malice or corruption of motive.

*Id.,* 484 U.S. at ——, 108 S.Ct. at 544, 98 L.Ed.2d at 565 (*quoting Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 354 20 L.Ed. 646 (1871)) (emphasis in original).

Thus, the Court in *Forrester* made clear that only "judicial acts" are protected by judicial immunity, and that administrative decisions, although "often crucial to the efficient operation of public institutions," such as the courts, are not protected by absolute immunity. 484 U.S. at ——, 108 S.Ct. at 545, 98 L.Ed.2d at 566. Judicial immunity has not been granted to judges promulgating a code of conduct for attorneys. *Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). Similarly, "judges acting to enforce the bar code would be treated like prosecutors, and then would be amenable to suit for injunctive and declaratory relief." *Id.* at 734–37, 100 S.Ct. at 1975–76.

In *Forrester,* Justice O'Connor explained that the analytical key "in attempting to draw the line" between functions for which judicial immunity attaches and those for which it does not is the determination whether the questioned activities are "truly judicial acts" or "acts that simply happen to have been done by judges." It is the *nature* of the function involved that determines whether an act is "truly" judicial.

The question then is whether an "administrative" decision to hire or fire a court staff employee, action not essentially "judicial," as in *Forrester,* is the functional equivalent of the action of the justices of a state supreme court and their designees in considering the qualifications of an appli-

cant for admission to the bar as in this case.

A careful examination of the *Forrester* and *Consumers Union* cases reveals that the nature of the function involved in determining qualifications for admission to the bar on the one hand, and hiring and firing court staff personnel or enforcing a bar code on the other, are essentially different. The former is a judicial act, the latter two are not.

As *Forrester* holds, hiring and firing administrative court staff personnel are functions that merely happen to be performed by some judges. Indeed, they are functions ordinarily performed by nonjudicial employers and, when judges perform them, the actor is different but the nature of the action is not. In many courts, the employment decisions for court staffing purposes are made by nonjudicial court personnel. There is, as the Court held in *Forrester*, nothing functionally or historically "judicial" about hiring or firing staff members. The same cannot be said for the historically judicial function of determining eligibility for, and the composition of, the state bar.

The language of *Forrester* itself, to say nothing of the very different facts involved there, suggests at least three separate reasons why the actions taken in this case by the Kentucky Supreme Court and its Committee on Character and Fitness are "judicial acts." First, in *Forrester*, the Supreme Court cited the availability of an appeal process as a central reason for granting judicial immunity to judges for their judicial acts: "Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effect inevitably associated with exposing judges to personal liability." *Forrester*, 484 U.S. at ——, 108 S.Ct. at 544, 98 L.Ed.2d at 565. Kentucky Supreme Court Rule 2.060 provides applicants to the Kentucky bar with an avenue of appeal on the record from adverse decisions by the Committee on Character and Fitness:

The decision of the Character and Fitness Committee as to the eligibility of an applicant for admission to the bar of this state shall be final unless, on motion by the applicant filed within sixty days after notice of an adverse decision has been mailed to his last known address, the Supreme Court upon *review of the record* overrules such decision.

(emphasis added).

Supreme Court review on the record of an adverse decision "as to the eligibility of the applicant for admission to the bar," initiated "on motion," describes a process of appellate review of possible "judicial mistakes or wrongs" that has no counterpart in the review of the inherently administrative function of hiring and firing court staff personnel.

Second, the *Forrester* Court quoted, with approval, from the decision in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), according immunity to the judicial disbarment of an attorney. The *Bradley* Court observed that acting to disbar an attorney invokes a power "possessed by all courts which have authority to admit attorneys to practice...." 80 U.S. (13 Wall.) at 354. If the action of a court in disbarring an attorney is a judicial act for which immunity attaches, in part, because it "invokes a power possessed by all courts which have authority to admit attorneys to practice," it follows inexorably that in exercising the power it has to determine who shall be admitted to practice, the Kentucky Supreme Court performs a judicial act for which immunity attaches. And if, as the *Forrester* Court observed, it is the nature of the function performed which determines the judicial character of an act and not "the character of the agent," it is of no moment that the actor is a designee of the justices of the Kentucky Supreme Court rather than the justices themselves. "Here, as in other contexts, immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." 484 U.S. at ——, 108 S.Ct. at 544, 98 L.Ed.2d at 565 (emphasis in original).

Finally, the power to determine eligibility for membership in the bar has historically been reposed exclusively in the courts. *See Ex parte Secombe, supra; Simons v. Bellinger, supra.* That is not to say that "because a judge acts within the scope of his authority, such ... decisions are brought within the court's 'jurisdiction' or converted into 'judicial acts'...." *Forrester,* 484 U.S. at ——, 108 S.Ct. at 545, 98 L.Ed.2d at 567. Some functions performed by courts are so inherently related to the essential functioning of the courts as to be traditionally regarded as judicial acts. Determining the composition of the bar is just such an historic and traditional function. The establishment of criteria for determining the intellectual competence, academic preparedness, and moral fitness of persons who petition the court for the privilege of undertaking the confidential trust of serving the court as one of its professional officers has always been a function confined to the courts themselves. It has been universally thought that the courts are best equipped to understand the requirements for adequate representation of lay persons before the courts and to identify the qualifications of those who would undertake such representation as the courts' officers. That inherent expertise, and the exercise of the power to apply it in admitting and rejecting candidates to the practice of law, functions rooted in tradition and history, are arguably as fundamental to the sound functioning of the judiciary as is the task of resolving the disputes such officers present.

We return, then, to the analytical key provided by Justice O'Connor in *Forrester* for "drawing the line" between functions for which judicial immunity attaches and those for which it does not: whether the function in question is a "truly judicial act[ ]" or an "act[ ] that simply happen[s] to have been done by judges." Whatever argument might be made about the inherently "judicial" character of the function of determining the membership of the bar, it is manifest that whether analyzed from the perspective of judicial precedent, judicial expertise, history and tradition, or the nature of the act itself, determining the composition of the bar is clearly not a function, like hiring and firing administrative, clerical, and other court personnel that is or ever has been performed by anyone in the private sector or in other branches of government, and "simply happen[s] to have been done by judges."

### III.

For the foregoing reasons, and those set forth in *Sparks, supra,* we hold that the actions taken by the Kentucky Supreme Court and the Committee on Character and Fitness, and its members, were "judicial acts" to which absolute immunity attached. Having carefully reconsidered our previous decision to that effect in light of the Supreme Court's decision in *Forrester,* we conclude that the district court's dismissal of Sparks' complaint must be AFFIRMED.