**Omar G. Rodriguez DIAZ, Plaintiff,**

v.

**John H. MOORE and Joseph M. Matthews, Defendants.**

**Civ. A. No. 91–40565/LAC.**

United States District Court, N.D. Florida, Tallahassee Division.

Aug. 24, 1994.

Omar G. Rodriguez Diaz, pro se.

C. Graham Carothers, Tallahassee, FL, for defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

COLLIER, District Judge.

This is an action filed under 42 U.S.C. § 1983. Plaintiff (Rodriguez Diaz) has sued the defendants, John H. Moore (Moore) and Joseph M. Matthews (Matthews) in their official and individual capacities for violation of his civil rights under the Fourteenth Amendment to the United States Constitution in connection with his application for admission to the Florida Bar. Specifically, Rodriguez Diaz claims that Moore, as executive director of the Florida Board of Bar Examiners (the Board), and Matthews, as a former Board member, have violated his due process rights by refusing to either make a final decision on his application for admission or afford him a formal hearing where he can defend specific charges.

Rodriguez Diaz has brought suit against Moore and Matthews individually, claiming that they have maliciously handled his application, in that they have intentionally refused to "act" on it since 1987, when he passed the Florida Bar examination, knowing that such refusal would result in his application becoming obsolete at which point they could then charge him additional sums to have his application returned to active status.[1] Rodriguez Diaz also argues that Moore's and Matthews' demand that he undergo a psychiatric evaluation by a psychiatrist of the Board's choosing at his expense before any decision will be made on his application was made solely in an effort to harass him and stall any decision on his application. In addition to monetary relief, Rodriguez Diaz requests declaratory and injunctive relief concerning the constitutionality of Article III(B), § 3(a) and (b) of the Rules of the Supreme Court Relating to Admissions to the Bar (Section 3), maintaining that it is constitutionally infirm under the due process clause of the Fourteenth Amendment both on its face and as it has been applied to him.[2]

## FACTS AND PROCEDURAL HISTORY

Rodriguez Diaz started law school at Nova University in 1980. He applied for admission to the Florida Bar on September 10 of the

---

1. Rodriguez Diaz claims this has been done in a malicious attempt to financially drain him.

2. This Rule provides:

Section 3. (a) Prior to recommending an applicant for admission to practice the profession of law in Florida, the Florida Board of Bar Examiners shall conduct an investigation and otherwise inquire into and determine the character, fitness and general qualifications of every applicant. In every such investigation and inquiry, the Board may obtain such information as bears upon the character, fitness and general qualifications of the applicant and take and hear testimony, administer oaths and affirmations, and compel by subpoena the attendance of witnesses and the production of books, papers and documents. Any member of the Board may administer such oaths and affirmations. Such investigations and inquiries shall be informal, but they shall be thorough, with the object of ascertaining the truth. Technical rules of evidence need not be observed. Any investigative hearing for such purpose may be held by a division of the board consisting of no fewer than three members of the Board. Each division shall record its proceedings and shall report its recommendations to the full Board.

(b) Following an investigative hearing, the Board shall determine:

(1) That the applicant has established his or her qualifications as to character and fitness; or

(2) That further investigation into the applicant's character and fitness is warranted; or

(3) That Specifications be filed charging the applicant with matters which if proven would preclude a favorable finding by the Board.
Admissions Rules art. III(B), § 3(a), (b) (1993).

same year.[3] However, his application was never processed due to his failure to pay the requisite application fee. By letter dated November 29, 1984, Rodriguez Diaz asked that his "1980 application be declared void due to major changes in information sought by the Florida Bar ever since." (doc. 34, exh. 4, no. 2) Rodriguez Diaz then filed a second application for admission to the Florida Bar dated December 3, 1984. At that time, the Board began a routine background investigation of Rodriguez Diaz's character and fitness to practice law. Based on the information provided, the Board was faced with investigating several prior criminal charges, both felonies and misdemeanors, as well as numerous prior civil law suits of which Rodriguez Diaz had been a party. Additionally, the Board had to consider Rodriguez Diaz's employment and educational records which were voluminous.

In August of 1986, the first report on Rodriguez Diaz's background and character investigation was sent to the Board's Character and Fitness Committee for review. The report was not complete because Rodriguez Diaz had refused to disclose much of the information requested.[4] Based on the information contained in the report, or lack thereof, the Board made the decision to request that Rodriguez Diaz appear for an informal investigative hearing. By letter dated September 18, 1986, the Board informed Rodriguez Diaz of its decision to hold the hearing for the purpose of inquiring into his prior arrest record, his apparent failure to disclose his prior arrest record to Drake University

Law School, and the numerous civil lawsuits of which he was a party. (doc. 34, exh. 2)

The hearing was held one year later in September of 1987.[5] Much of the hearing was devoted to the Board's inquiry of Rodriguez Diaz's employment termination with the Florida Department of Health and Rehabilitative Services and his extensive involvement with the legal system, both as a plaintiff and a defendant.[6] The hearing concluded with the Board requesting more information.[7] Ultimately, Rodriguez Diaz complied with the requests, and on February 16, 1988, after further investigation of the new information, the Board notified Rodriguez Diaz that he would have to submit to a psychiatric evaluation before a decision would be rendered on his application. (doc. 34, aff. John H. Moore) The Board informed Rodriguez Diaz that the evaluation would have to be performed by a psychiatrist of the Board's choosing at Rodriguez Diaz's expense. On February 19, 1988, Rodriguez Diaz wrote a letter to the Board stating that he would not submit to a psychiatric evaluation under the Board's terms. Included with his letter was a copy of an evaluation performed in September 1987, by a doctor of Rodriguez Diaz's own choosing.

Rodriguez Diaz spent the next eighteen months writing abusive letters to the Board and its executive director objecting to the terms of the Board's request and submitting evaluations by doctors of his own choice together with the results of various psychological tests which he voluntarily submitted to in conjunction with the evaluations.[8] However,

---

3. At some point during the year, however, he left law school at Nova, only to reenter again in 1981, at Drake University School of Law in Des Moines, Iowa.

4. Rodriguez Diaz devoted a great deal of time between 1984 and 1986 arguing with the Board over its requests for information and challenging the requests before the Florida Supreme Court, primarily on the grounds of his right against self-incrimination and right to privacy. Despite the Florida Supreme Court's rulings to the contrary, Rodriguez Diaz continued to resist and object to the Board's requests and did everything humanly possible to thwart the overall application process. His letters to the Board were irrational, and in many cases hostile. The language used was often vulgar and almost always demonstrated extreme paranoia of the "system."

5. Rodriguez Diaz was represented by counsel at the hearing.

6. The hearing record reveals a recalcitrant applicant for admission to the Bar. Rodriguez Diaz was constantly on the defensive during the proceedings, always questioning the Board's motives for inquiry into his background.

7. This is in accordance with Section 3(b)(2).

8. Several of these letters threatened the Board with legal action if it continued to insist that he undergo a psychiatric evaluation by a doctor of the Board's choosing at Rodriguez Diaz's expense. The letters also expressed Rodriguez Diaz's opinion that the Board members and the executive director should submit to a psychiatric evaluation.

on November 14, 1990, Rodriguez Diaz sent a letter to the Board agreeing to its request. The Board then replied that despite his recent consent to undergo an evaluation on the Board's terms, his application would not be placed before the Board for consideration because it had become obsolete due to the length of time that had passed since he had last updated his background and character information. The Board's reply indicated that Rodriguez Diaz would have to pay $230.00 to "reactivate" his application, as well as file additional information to update his previous background investigation.[9] (doc. 34, exh. 1)

On December 27, 1990, Rodriguez Diaz requested a waiver of the $230.00 fee. The Board responded that he would be required to submit a petition fee of $25.00 before the Board would consider his request to waive the application fee. Rodriguez Diaz then requested a waiver of the $25.00 fee but was informed by the Board staff that this fee could not be waived. To date, Rodriguez Diaz's application remains obsolete, and he has not undergone a psychiatric evaluation by a doctor of the Board's choosing at his expense. (doc. 34, aff. of John H. Moore)

On July 12, 1988, Rodriguez Diaz filed a complaint against the State of Florida, the Supreme Court of Florida, and the Board in the Southern District of Florida (Diaz I).[10] In his amended complaint filed September 2, 1988, Rodriguez Diaz alleged that the defendants had violated his rights to due process and equal protection by refusing to admit him to the Bar or to file specific charges against him and hold a formal hearing. (doc. 34, exh. 3) The court dismissed his complaint for failure to state a claim upon which relief could be granted. This order was affirmed by the Eleventh Circuit Court of Appeals, and certiorari was denied by the United States Supreme Court.

Rodriguez Diaz filed this complaint on September 4, 1990, alleging that the same defendants sued in Diaz I[11] had violated his equal protection and due process rights by refusing to "act" on his application for admission to the Florida Bar (Diaz II).[12] This Court dismissed his amended complaint for failure to state a claim upon which relief could be granted, and Rodriguez Diaz appealed. The order was affirmed in part and reversed in part by the Eleventh Circuit. (doc. 25) In remanding the case, the appellate court ruled that Rodriguez Diaz had alleged facts sufficient to state a procedural due process claim. It is this claim which is currently before the Court for consideration on defendants' motion for summary judgment.

## Conclusions of Law

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." F.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). An issue of fact is "genuine" if the record as a whole could lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "material" if it might affect the outcome of the case under the governing law. *Id.*

---

9. In its letter informing Rodriguez Diaz of the status of his application, the Board referenced Article IV, Section 2 of the Rules of the Supreme Court of Florida Relating to Admissions to the Bar, which deals with additional fees for applicants who have not been admitted in another jurisdiction during the twelve months preceding their application for admission to the Florida Bar. (doc. 34, exh. 1)

10. This case was transferred to the Northern District of Florida on motion of the defendants.

11. Based on Rodriguez Diaz's failure to serve and the Eleventh Circuit's order, Moore and Matthews are the only defendants who remain a part of this action.

12. This case also was filed in the United States District Court for the Southern District of Florida and later transferred to the Northern District.

■ One of the issues raised by the defendants in their motion for summary judgment is lack of jurisdiction. Defendants correctly note that 28 U.S.C. § 1257 prohibits a federal district court from reviewing a final judgment of the highest court of a state. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314–15, 75 L.Ed.2d 206 (1983) (reaffirming its reasoning in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)). Such decisions are reviewable only by the United States Supreme Court. *Id.* Section 1257, however, does not affect a federal district court's ability to entertain general challenges to bar rules promulgated by a state's highest court in *nonjudicial* proceedings. *Id.*

■ This case falls squarely under the *Rooker–Feldman* doctrine. (doc. 34, exh. 8) On March 25, 1992, Rodriguez Diaz filed a Petition for Writ of Mandamus in the Supreme Court of Florida in which he raised the same claims and issues raised in this action. (doc. 34, exh. 8) Review of the petition, together with Rodriguez Diaz's reply to the defendants' response to his petition, convinces the Court that the petition in essence was a constitutional challenge on procedural due process grounds to the Board's application of Section 3 to the particular facts of his case. He specifically alleged that the Board had violated his rights to due process and equal protection under the United States and Florida Constitutions by refusing to take final action on his application.[13] (doc. 34, exh. 8) On June 23, 1992, the Florida Supreme Court denied Rodriguez Diaz's petition.[14] Accordingly, the Court lacks jurisdiction over this claim.[15] *See Lampkin–Asam v. Supreme Court of Florida,* 601 F.2d 760 (5th Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980) (district court lacks jurisdiction in a suit under 42 U.S.C. § 1983 to review decision of state supreme court).

As noted, however, the *Rooker–Feldman* doctrine does not prevent a federal district court from considering a facial challenge to the constitutionality of a bar rule promulgated by a state's highest court. In this case, Rodriguez Diaz asserts a facial challenge to Section 3 on the ground that it fails to set a time limit on how long the Board may continue its investigation of an applicant's background without affording the applicant a formal hearing. Although there is no jurisdictional impediment to the Court's consideration this claim, the Court finds the claim barred under the doctrine of res judicata.

■ Federal courts will apply the law of the state in which they sit with respect to the doctrine of res judicata.[16] *Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir.1993), *cert. denied, Sinkfield v. Wesch,* —— U.S. ——, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994); *Manning v. City of Auburn,* 953 F.2d 1355, 1358 (11th Cir.1992); *N.A.A.C.P. v. Hunt,* 891 F.2d 1555, 1560 (11th Cir.1990); *McDonald v. Hillsborough County School Board,* 821 F.2d 1563, 1565 (11th Cir.1987). Under Florida law, each of the following four elements must

---

**13.** He attached to the petition copies of various personal psychological evaluations which had been performed by doctors and professionals not selected by the Board, apparently in an effort to demonstrate his fitness to practice law.

**14.** The order read in pertinent part:

The petitioner [Rodriguez Diaz] in the above cause has filed a Petition for Writ of Mandamus, and the same having been duly considered, it is ordered that said Petition be and the same is hereby denied.
(doc. 34, exh. 8)

**15.** The Court is not bothered by the Florida Supreme Court's decision to issue the order without opinion. There could be no misunderstanding as to the nature of his claim or the relief sought. The order stated that the Court had given the petition *due consideration.* This, coupled with the fact that the Court had the authority to grant Rodriguez Diaz the relief he sought, is sufficient to indicate to this Court that the Florida Supreme Court considered Rodriguez Diaz's petition on the merits. *See Feldman,* 460 U.S. at 478–79, 103 S.Ct. at 1312–13.

**16.** Some courts have called this rule into question, suggesting instead that federal courts considering the preclusive effect of a prior *federal court judgment* should apply federal, not state, common law. *See Kachler v. Taylor,* 849 F.Supp. 1503, 1514–16 (M.D.Ala.1994). Aside from the fact that this Court is bound by the Eleventh Circuit Court of Appeal's statement to the contrary in *Wesch,* the rule in *Kachler* would not change this Court's ruling, as the Court finds each of the federal common law elements of res judicata satisfied as well.

be present before res judicata can be invoked: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties of the action; and (4) identity of the quality of the person for or against whom the claim is made. *Maison Grande Condominium Association, Inc. v. Dorten, Inc.*, 621 So.2d 762, 764 (Fla. 3d DCA 1993) *cert. denied,* 634 So.2d 625 (Fla. 1994); *Signo v. Florida Farm Bureau Casualty Insurance Co.*, 454 So.2d 3, 4 (Fla. 4th DCA 1984); *Albrecht v. State*, 444 So.2d 8, 12 (Fla.1984); *Donahue v. Davis*, 68 So.2d 163 (Fla.1953).

■ These four elements are satisfied by the judgment in Diaz I. In Diaz I, Rodriguez Diaz sought damages as well declaratory and injunctive relief aimed at affording him a final decision on his application for admission to the Florida Bar. He alleged various constitutional violations, including procedural due process, all stemming from the application process, referring specifically to the length of time his application had been pending before the Board without disposition. (doc. 34, exh. 3) This is precisely the facial challenge currently before the Court for consideration, and it is clear that the operative facts in Diaz I are the same as would be necessary to maintain his suit in this case.[17] *See Albrecht*, 444 So.2d at 12. Accordingly, the first two elements of res judicata are satisfied.

The third and fourth elements have been met as well. Although Moore and Matthews were not named as individual defendants in Diaz I, the Eleventh Circuit has recognized that "[p]rivity [ ] exists where a party to the original suit is 'so closely aligned to a nonparty's interest as to be his virtual representative.'" *Hunt*, 891 F.2d at 1560–61. Privity

also exists "where the nonparty's interests were represented adequately by the party in the original suit." *Id.* In Diaz I, Rodriguez Diaz sued the State of Florida, The Florida Supreme Court, and the Board. Here, the defendants are the Board's executive director and a former Board member. Unquestionably then, privity exists in this case. Further, the named parties in Diaz I clearly " . . . had the incentive to adequately litigate the claims in the same character or capacity as would . . ." Moore and Matthews, [*see Mc-Donald,* 821 F.2d at 1566]; therefore, there is identity of the quality of the person against whom the claim is made, satisfying the final element.

Rodriguez Diaz nonetheless argues against application of res judicata to this case based on his claims against Moore and Matthews in their individual capacities which he suggests were not a part of his complaint in Diaz I. The Court is not persuaded by this argument because even assuming that Diaz I was a suit against the Board and its members solely in their official capacities, which the Court doubts based on the allegations of harassment made and the monetary relief requested in Diaz I,[18] res judicata is nonetheless applicable to this case, as these are claims which *could have been brought* in Diaz I. *See Maison Grande*, 621 So.2d at 764 (citing, *Albrecht*, 444 So.2d at 11–12). For example, in this case, Rodriguez Diaz claims that the Board members have harassed him repeatedly since he filed his application in 1984. He suggests that the Board intentionally set the site for his informal investigative hearing in Tampa solely for the purpose of causing him a financial hardship. Additionally, he claims that the Board's investigation into his background and request for a psychiatric evalua-

17. Rodriguez Diaz alleged the identical "as applied" procedural due process claim in Diaz I as well:

. . . this petitioner is entitled to its 14th Amendment due process rights to a formal hearing, notice and an opportunity to be heard, in order for this petitioner to carry its burden of proof as required by the Rules of the Supreme Court of Florida Relating to Admissions to the Bar and be able to present evidence and live testimony of character witnesses in reference to this petitioner's impeccable good moral character and, as added in 1986, emotional fitness

to practice law. The "respondents" through the FBOBE have denied to this petitioner its due process rights and equal protection of the laws as afforded by both the United States and Florida Constitution.

(doc. 34, exh. 3).

18. In any event, a party's request for additional relief in the second action does not take the first judgment out of the scope of res judicata. *Maison Grande Condominium Association, Inc. v. Dorten, Inc.*, 621 So.2d 762, 764 (Fla. 3d DCA 1993).

tion were done in a malicious attempt to thwart or impede his admission to the bar.[19] Accordingly, all of the facts which have given rise to the individual claims against Moore and Matthews in this suit occurred prior to the time Rodriguez Diaz filed his complaint in Diaz I, and res judicata bars these claims as well.[20]

 One might argue that the judgment in Diaz I does not preclude the maintenance of this action because the amended complaint was dismissed with leave to amend, so therefore the judgment could not have been *on the merits*. Although the Court is mindful of the general rule which holds that a dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is considered a " 'judgment on the merits,' " *unless the court specifies otherwise*, [see *Hunt*, 891 F.2d at 1560 (quoting, *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981)) ], in this case Rodriguez Diaz failed to amend in accordance with the court's order, choosing instead to appeal the dismissal.

Under these circumstances, the order in Diaz I became a final judgment on the date the allotted time to amend expired. *Hertz Corp. v. Alamo Rent–A–Car, Inc.*, 16 F.3d 1126, 1131–32 (11th Cir.1994). And, once final, the judgment became res judicata both as to the claim alleged and to any other claims that might have been asserted in Diaz I. *See Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir.1985) (cautioning that failure to take advantage of a court's grant of leave to amend a complaint will preclude further litigation of the claim alleged). In light of these cases, it cannot be said that the dismissal in Diaz I was not *on the merits*.[21]

 Regarding Rodriguez Diaz's claim against Moore and Matthews in their individual capacities, even if the judgment in Diaz I and/or the order denying the Petition For Writ of Mandamus were not bars to these claims, summary judgment for the defendants nonetheless · would be appropriate based on the defense of absolute judicial immunity.[22] In *Sparks v. Character and Fit-*

---

**19.** Moreover, in his amended complaint in this case, Rodriguez Diaz refers to the fact that he has filed previous lawsuits against Moore "for the same unconstitutional, oppressive, and malicious behavior" dating back to approximately 1987.

**20.** Rodriguez Diaz argues that the suit against Moore and Matthews in their individual capacities was not spawned until he received two letters from the Board in 1991. The letters are not mentioned in his amended complaint, however. The amended complaint refers to conduct dating back to the initiation of his background investigation which began in 1984 and continued until February, 1988, when the Board made the decision concerning the psychiatric evaluation. Diaz I was not filed until·July 12, 1988.

**21.** The order of denial of Rodriguez Diaz's 1992, Petition For Writ of Mandamus to the Florida Supreme Court also would bar the claims in this action. Although Florida courts give preclusive effect to denials of extraordinary writs *only* in very limited circumstances, such as when the sole possible ground of the denial was that the court acted on the merits or when it affirmatively appears that the denial was intended to be on the merits, [see *Public Employee Relations Committee v. District Court School Board*, 374 So.2d 1005, 1010 (Fla. 2d DCA 1979), *cert. denied*, 383 So.2d 1193 (Fla.1980) ], the Court finds that this case presents circumstances making the second exception applicable. As previously noted, the Florida Supreme Court's denial of Rodriguez

Diaz's petition states that the court gave *due consideration* to the petition prior to entering its denial of the requested writ. Accordingly, because this "affirmatively appears" on the face of the order and because the four elements for application of res judicata are satisfied, the Court concludes that the order denying Rodriguez Diaz's Petition For Writ of Mandamus would act as a bar to this suit as well.

**22.** Any claim against the Board as an entity would be barred under the Eleventh Amendment to the United States Constitution. *See Berger v. Cuyahoga County Bar Association*, 983 F.2d 718, 722 (6th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); *Cahill v. Florida Department of Business and Professional Regulation*, 8 Fla.L. Weekly Fed. D290, 291, 1994 WL 378678 (M.D.Fla.1994); *see also Mueller v. The Florida Bar*, 390 So.2d 449, 451 (Fla. 4th DCA 1980) (recognizing the Florida Bar and its staff as an "arm" of the judiciary). Likewise, any claim against Moore and Matthews individually seeking an injunction requiring them to make a decision on Rodriguez Diaz's application for admission would implicate the Eleventh Amendment because, such relief necessarily would require the defendants to perform an official act of the state. *See Perry v. Barnard*, 745 F.Supp. 1394, 1403 (S.D.Ind.1989), *aff'd.*, 911 F.2d 736 (7th Cir.1990) (quoting, *Jensen v. State Board of Tax Commissioners*, 763 F.2d 272 (7th Cir.1985)).

*ness Committee of Kentucky,* 859 F.2d 428 (6th Cir.1988) *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989), the Sixth Circuit Court of Appeals held that when a state's constitution charges the highest court of that state with the responsibility for promulgating rules to govern admission to the state bar and that court in turn adopts rules establishing boards and committees for the purpose of administering procedures for the admission of persons to the bar, the members of these various board and committees, as well as their staff, act on behalf of the court when performing their official duties, and, as such, are entitled to the same immunity afforded judicial officers in the performance of their duties.[23] *Id.* at 431 (board members' actions are the "functional equivalent" of judicial duties in matters relating to bar admissions). As explained by the court in *Sparks,*

> The act of considering an application to the bar is a judicial act. And it is no less a judicial act simply because it is performed by nonjudicial officers in whom the responsibility for the performance of such duties is lawfully delegated by the judiciary. Therefore, those who perform those duties on behalf of the judiciary are entitled to the same judicial immunity as would be enjoyed by judicial officers performing the same act.

*Id.*

Based on the sound reasoning in *Sparks,* the Court finds that the actions of which Rodriguez Diaz complains, namely Moore's and Matthews' failure to either make a decision on his application or convene a formal hearing with specific charges, were acts performed in the furtherance of their official duties as an arm of the Florida Supreme Court, and that Moore and Matthews

therefore are absolutely immune from suit in their individual capacities.[24]

Accordingly, defendants' motion for summary judgment (doc. 34) is GRANTED. The Court concludes that it lacks subject matter jurisdiction over Rodriguez Diaz's constitutional challenge to Section 3 as it has been applied to him. Additionally, the Court finds Rodriguez Diaz's facial challenge to Section 3, as well as the claims against the defendants in their individual capacities, barred by the doctrine of res judicata. As an alternative to this finding, the Court finds that the defendants are immune from suit in their individual capacities.

**DONE and ORDERED** this 24th day of August 1994.

---

**23.** The Board is an agency of the Florida Supreme Court created for the purpose of regulating the admission of persons to practice law within the State. *See* Fla. Const. art. V, § 15, Fla.Stat.Ann., Rules of the Supreme Court Relating to Admissions to the Bar, art. I, § 2.

**24.** The Court would find them immune on the basis of qualified immunity as well. Based on the facts of this case, the defendants' conduct was objectively reasonably in light of clearly established law. *See Harlow v. Fitzgerald,* 457 U.S.

800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Moreover, in its order affirming in part and reversing and remanding in part this Court's earlier order in this case, the Eleventh Circuit ruled that Rodriguez Diaz had "failed to state sufficient grounds for his claim that the defendants have acted maliciously in conducting their investigation and have conspired to deprive him of his constitutional rights." *Rodriguez–Diaz v. Matthews,* No. 92–2323 (11th Cir.1993).